# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILILNOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARK HOLSHOUSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 2654 |
| | ) | |
| ABBOTT LABORATORIES, | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Mark Holshouser ("Dr. Holshouser"), a former employee of Defendant Abbott Laboratories ("Abbott"), alleges that he was terminated from his position due to age discrimination in violation of the Illinois Human Rights Act, 775 Ill. Comp. Stat. § 5/1-101 *et seq*. (the "IHRA"). Dr. Holshouser further claims that he was wrongfully terminated in order to prevent his pension benefits from vesting in violation of the Employee Retirement Income Security Act ("ERISA") Section 510, 29 U.S.C. § 1140 ("Section 510"). Abbott has moved for summary judgment on Dr. Holshouser's claims, arguing, *inter alia*, that he has failed to state a *prima facie* case of age discrimination and his termination was unrelated to the timing of the vesting of his pension benefits. For the reasons set forth below, Abbott's motion is granted.

## **Local Rule 56.1**

Motions for summary judgment in the Northern District of Illinois are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am.*

*Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 537 (7th Cir. 2011) (quotation omitted).

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Local Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1).

The failure of a nonmoving party to abide by the rule's requirements carries significant consequences. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000).

Dr. Holshouser, who is represented by counsel, has failed to file a Local Rule 56.1(b)(3)(B) response in any format, let alone one that properly responds to each and every statement of fact in Abbott's Local Rule 56.1(a)(3) statement. Thus, the Court must deem

admitted each and every one of Abbott's statements of fact so long as each statement offers admissible evidence and is supported by the citation to the record.

Dr. Holshsouser has, however, submitted a Local Rule 56.1(b)(3)(C) statement of additional material facts in support of his position. The Court will consider any relevant and properly supported facts included therein to the extent that they are not disputed by Abbott, which has filed a response.

## Facts[1]

Dr. Holshouser was hired by Abbott on January 23, 2006, to serve as a Director of Research Quality Assurance at a facility located in Abbott Park, Illinois. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 2, 60.) Dr. Holshouser served in various roles at Abbott during the course of his employment, including Director of Good Manufacturing Practices and Director of Good Clinical Practice. (*Id.* ¶ 3.) At all relevant times during his employment, Dr. Holshouser reported to Gillian Hodkinson, Divisional Vice President of Quality Assurance in Research and Development. (*Id.* ¶ 4.) Dr. Holshouser was employed as an at-will employee. (*Id.* ¶ 5.)

At all relevant times during his employment with Abbott, Abbott maintained a Code of Business Conduct. (*Id.* ¶ 15.) Abbott required Dr. Holshouser to certify on an annual basis that he received and read the Code of Business Conduct. (*Id.*) Abbott's Code of Business Conduct provides, among other things, that "Abbott's policy is to provide employment opportunities without regard to race, religion, color, national origin, sex, age, ancestry, citizenship, veteran status, marital status, sexual orientation, or disability or any other reason prohibited by law." (*Id.* ¶ 16.) Abbott also maintains a number of personnel policies designed to promote a professional atmosphere free from discrimination, and which are made available to all employees on Abbott's

---

[1] Unless otherwise stated, the following facts are taken from Abbott's Local Rule 56.1(a)(3) Statement and, for the reasons set forth above, are taken as undisputed pursuant to Local Rule 56.1(b)(3).

3

internal human resources website. (*Id.* ¶¶ 17-18.) These policies, of which Dr. Holshouser was aware, include an Equal Employment Opportunity policy, a Workplace Harassment policy, and a Termination policy. (*Id.* ¶¶ 19-20.) Abbott's Equal Employment Opportunity policy states, in relevant part, that Abbott's policy is to ensure career opportunities without regard to . . . age . . . [and] decisions as to hiring, promotion, and other aspects of the employment relationship will be based solely upon job-related qualifications." (*Id.* ¶ 21.)

In 2010, Abbott purchased a company in California called Facet Biotech ("Facet"), and began to integrate Abbott's and Facet's operations. (*Id.* ¶ 22.) On at least two occasions that summer, Ms. Hodkinson, Dr. Holshouser's supervisor, discussed issues related to Facet's employee headcount with Dr. Holshouser, as well as the need to keep any decisions Abbott made regarding headcount confidential. (*Id.* ¶ 23.) On September 3, 2010, Ms. Hodkinson sent an email to Dr. Holshouser and others, stating, in relevant part, that "two areas of uncertainty" remained as to the final headcount decisions, and that until those uncertainties were resolved, "HC/people decisions are pending and no communications should be made to employees. My understanding is that we'll have these answers before end of September." (*Id.* ¶ 24.) Dr. Holshouser admitted that he understood Ms. Hodkinson's September 3, 2010, email as directing him not to discuss Abbott's decision regarding the potential retention of the Facet employees. (*Id.* ¶ 25.)

On September 14, 2010, Abbott held a meeting to discuss the Facet merger and address standard operating procedures. (*Id.* ¶ 26.) Employees from both Facet and Abbott attended the meeting. (*Id.* ¶ 27.) At that meeting, Dr. Holshouser announced that, after 2011, some Facet employees currently located in Redwood City may not be in Redwood City much longer. (*Id.* ¶¶ 28-29.) Two days later, Christi Lehner, Director Business HR, contacted Abbott Employee

4

Relations to report that Dr. Holshouser had divulged confidential information during the September 14, 2010, meeting. (*Id.* ¶ 30.) Rosalie Lewis, Abbott's Manager of Employee Relations, was designated to investigate the report and any violations of Abbott's corporate policies and/or Code of Business Conduct. (*Id.* ¶¶ 31, 33.) As part of her investigation, Ms. Lewis interviewed Dr. Holshouser and several other employees who had attended the September 14, 2010, meeting. (*Id.* ¶ 34.) After completing her investigation, Ms. Lewis concluded that Dr. Holshouser had disclosed confidential business information regarding possible headcount reductions. (*Id.* ¶ 35.)

Ms. Lewis then prepared a summary of her investigation, which noted that Dr. Holshouser previously had been counseled and disciplined in connection with Abbott's Code of Business Conduct. (*Id.* ¶¶ 36-37.) Dr. Holshouser's previous counseling history also revealed that he had received a verbal warning in November 2007, after he had provided copies of documents from his previous company to his team, and a written warning for harassment in May 2008, after he had engaged in unprofessional behavior and used profanity during a discussion with Employee Relations. (*Id.* ¶ 38.) Ms. Lewis ultimately determined that Dr. Holshouser had violated Section VII of Abbott's Code of Business Conduct, Principle 11: Protection of Abbott's Confidential Information, when he made his comments at the September 14, 2010, meeting. (*Id.* ¶ 39.) The results of her investigation were conveyed to Ms. Hodkinson. (*Id.* ¶44.) Ms. Lewis was not aware that Dr. Holshouser would vest in Abbott's retirement plan.[2] (*Id.* ¶ 40.)

In September 2010, Amy Potthoff, a Divisional Vice President of Development Operations at Abbott, also reported Dr. Holshouser's comments to Ms. Hodkinson. (Def.'s LR 56.1(a)(3) Stmt. ¶ 42.) Based upon the information from Ms. Potthoff and the results of Ms.

---

[2] While neither party includes Dr. Holshouser's precise vesting date in their Rule 56.1 statements, his response brief asserts that his benefits would have vested "on or around January 23, 2011." (Pl.'s Resp. Br. 9.)

Lewis' report, Ms. Hodkinson concluded that Dr. Holshouser had divulged confidential information during the September 14, 2010 meeting, contrary to her instructions and in violation of Abbott's Code of Business Conduct. (*Id.* ¶¶ 45, 54.) Based on that belief, Ms. Hodkinson made the decision to terminate Dr. Holshouser's employment. (*Id.* ¶¶ 41, 46, 54.) When she made her decision, Ms. Hodkinson was not aware that any of the other employees who reported to her had disclosed confidential information regarding pending headcount decisions. (*Id.* ¶ 53.)

At the time that Ms. Hodkinson decided to terminate Dr. Holshouser, she was neither aware of his age, nor of when he would vest in Abbott's retirement plan. (*Id.* ¶¶ 47-48.) She did not review any documents related to either Dr. Holshouser's age, his retirement benefits, or his pension when making her decision. (*Id.* ¶¶ 49-50.) Ms. Hodkinson also did not review any documents related to Dr. Holshouser's performance reviews, his human resources file, or his employee relations files before making her decision. (*Id.* ¶¶ 51-52.)

Ms. Holdkinson terminated Dr. Holshouser on September 23 or 24, 2010. (*Id.* ¶ 55.) Rather than hiring a replacement, Ms. Hodkinson divided Dr. Holshouser's job responsibilities between herself and two of her subordinates, Mickie Radjenovich and Heinz Schlayer.[3] (*Id.* ¶¶ 10, 11, 56.)

Later, in the beginning of 2011, Abbott implemented a reduction in force in its Quality Assurance organization. Dr. Holshouser, however, would not have been included in those layoffs. (*Id.* ¶ 57.) In fact, Ms. Hodkinson never intended to reduce the number of Directors in her organization as part of that reduction in force. (*Id.* ¶ 58.)

---

[3] Because Dr. Holshouser brings a claim for age discrimination, the Court notes that Dr. Holshouser was born on May 22, 1954. (*Id.* ¶ 6.) Ms. Hodkinson was born on January 30, 1959. (*Id.* ¶ 7.) Mickie Radjenovich was born on July 9, 1963. (*Id.* ¶ 10.) Heinz Schlayer was born on September 8, 1955. (*Id.* ¶ 11.) Rosalie Lewis, the Employee Benefits employee who conducted the investigation, was born on January 12, 1961. (*Id.* ¶ 32.) Amy Potthoff, the individual who reported Dr. Holshouser's comments to Ms. Hodkinson, was born on June 16, 1962. (*Id.* ¶ 43.)

**Discussion**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321-22.

**I.     Illinois Human Rights Act Claim – Age Discrimination**

A party alleging age discrimination under the IHRA is subject to the same burden of proof as a party bringing suit pursuant to the Age Discrimination in Employment Act ("ADEA") under federal law. *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013). The plaintiff "may proceed under either the direct or indirect method of proof and may rely on circumstantial evidence to meet his burden." *Id.* Where a party chooses to proceed under the direct method, as Dr. Holshouser asserts he does (Pl.'s Resp. 3-4), in order "[t]o survive summary judgment . . . he must offer evidence from which an inference of discriminatory intent can be drawn," including "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Teruggi*, 709 F.3d at 659-60 (citing *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)). A plaintiff "may combine these various types of evidence" in order to demonstrate a "'convincing mosaic' of circumstantial evidence'" sufficient to allow the court to "make a reasonable inference of discriminatory intent." *Id.* at 660 (internal citations and

quotations omitted.) After considering the foregoing factors, the Court finds that Dr. Holshouser has not met his burden, and his IHRA claim cannot survive summary judgment.[4]

Dr. Holshouser's first argument in support of his claim under the direct method is that the timing of his dismissal from Abbott was suspicious.[5] To that end, Dr. Holshouser claims that if he had been retained by Abbott until the reduction in force occurred in his department in early 2011, he would have been fully vested in his pension plan prior to his termination. (Pl.'s Resp. 1.) But Dr. Holshouser has failed to dispute Abbott's numerous assertions to the contrary, namely that: (1) the decision to terminate Dr. Holshouser was solely based upon his breach of confidentiality (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 45-48); (2) the offending statements were made and investigated several months before the reduction in force in his department occurred (*Id.* ¶¶ 55, 57); (3) Ms. Hodkinson did not review any information regarding his vesting date or any other retirement or benefits information before making her decision to terminate him (*Id.* ¶¶ 47-53); (4) Ms. Lewis, the investigator from the employee relations departments was not aware of his vesting date or any retirement or benefits information when investigating the charges against him (*Id.* ¶ 40); and (5) Abbott had no intention of including Dr. Holshouser in the planned reduction in force in his department, because there was no plan to terminate anyone at the director level. (*Id.* ¶¶ 57-58.) And, even if the evidence provided by Abbott were less

---

[4] While Dr. Holshouser makes no claim that he intends to proceed under the indirect method, the Court notes that the analysis here is largely the same given that his claims stand or fall based upon whether the reason provided for his termination was pretextual. *See Egonmwan v. Cook Cnty. Sheriff't Dep't,* 602 F.3d 845, 851 (7th Cir. 2010) ("similarly situated" and "pretext" analyses are substantially the same under the direct and indirect method); *see also Coleman v. Donahoe,* 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("It seems to me that the time has come to collapse all these tests into one.").

[5] Although the "suspicious timing" analysis is frequently conflated with an analysis of whether a defendant exhibited ambiguous statements or behavior towards other employees in the protected group, *see Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994), Dr. Holshouser makes no argument citing any ambiguous statements or behavior towards other similarly-situated employees. Nor does Dr. Holshouser present any evidence that similarly-situated employees received better treatment. The Court therefore limits its consideration to Dr. Holshouser's arguments regarding suspicious timing and pretext.

substantial than this, "suspicious timing alone is rarely sufficient to defeat a motion for summary judgment." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 736 (7th Cir. 2011) (summary judgment granted to defendant where plaintiff presented only weak evidence of temporal proximity and discrimination claim was otherwise "contradicted by" records supplied by defendant). Dr. Holshouser must provide some evidence to support his pretext argument in order to prevail.

But, despite Dr. Holshouser's protestations to the contrary, the Court can find nothing in the record giving rise to a reasonable inference that Abbott's reason for terminating Dr. Holshouser was prextual. Dr. Holshouser's response primarily attacks the method Ms. Lewis used to conduct her investigation, as well as her conclusions. (Pl.'s Resp. 4-5.) But Abbott has provided clear and undisputed evidence that Ms. Hodkinson (not Ms. Lewis) made the decision to terminate Dr. Holshouser for what she believed to be violations of confidentiality at the September 14 meeting, a decision that was based upon the oral report from Ms. Potthoff and Ms. Lewis' written report. (*See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 45-48.) Indeed, Dr. Holshouser himself concedes that Ms. Hodkinson "accepts sole responsibility" for this decision. (*See* Pl.'s Resp. 6; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20.) Significantly, it also is undisputed that neither Ms. Hodkinson nor Ms. Lewis were aware of Dr. Holshouser's vesting date.[6] (*See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 40, 47-52.)

---

[6] While Dr. Holshouser attempts to argue that Ms. Lewis must have known of the timing of his vesting, the evidence he cites does not support such an inference. Dr. Holshouser's LR 56.1(b)(3)(C) statement sets forth the following proposition: "It was common within Abbott that vesting in retirement programs was typically on a five year vesting period," citing Rosalie Lewis' deposition at p. 97:11-14. However, as Abbott points out, Lewis was asked only whether it "is fairly common that being vested in the retirement program is typically a five-year vesting period," and she responded "I would assume so." (Def.'s Resp. LR 56.1(b)(3)(C) Stmt. ¶ 31.) This snippet of testimony does not create an inference that Ms. Lewis was aware of when Dr. Holshouser's pension would vest, or that she reviewed any documents that would have given her this information prior to concluding her investigation.

9

It is well-settled in this Circuit and others that, where an employer honestly believes the reasons provided for a termination, a plaintiff cannot establish pretext, even if those reasons were wrongheaded in some manner. *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) ("the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason *was* his reason: not a good reason, but the true reason.") (emphasis in original); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (in employment discrimination cases "we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what "*motivated* the employer.") (internal citations omitted). It is undisputed that Ms. Hodkinson was motivated to terminate Dr. Holshouser solely by her belief that he had disclosed confidential information. Moreover, it is undisputed that Ms. Lewis did not take into account Dr. Holshouser's pension benefits in conducting her investigation. Thus, any flaws that could be identified in Ms. Lewis' methodology and/or her results would not salvage Dr. Holshouser's claim.[7] The Court concludes based upon the record before it that summary judgment is appropriate as to Count I.

## II. ERISA Discrimination

Dr. Holshouser's second claim is premised upon the same theory underlying his assertions of pretext, *i.e.*, that he was wrongfully terminated in order to preclude him from becoming fully-vested in Abbott's pension plan. Abbott points out that Dr. Holshouser has failed to adequately address Count II of his Complaint in his summary judgment response, and argues that he has waived his ERISA discrimination claim. *See Harper v. Vigilant Ins. Co.*, 433

---

[7] The Court notes that Dr. Holshouser also does not present any argument or evidence that Abbott offered shifting justifications for his termination, which, if combined with other circumstantial evidence, could support a pretext argument. *See Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 915-16 (7th Cir. 2010).

F.3d 521, 528 (7th Cir. 2005). The Court agrees that Dr. Holshouser did not specify that he was addressing his ERISA claim in his response brief. However, because Dr. Holshouser's argument of pretext also forms the crux of his ERISA claim, to hold that Dr. Holshouser has waived his ERISA claim would elevate form over substance. The Court therefore addresses the merits of this claim.

Section 510 of ERISA provides, in relevant part, that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." 29 U.S.C. § 1140. In order for Dr. Holshouser to establish that he was discriminated against in violation of Section 510, he "must establish more than a loss of benefits; [he] must demonstrate that [his] employer[] terminated [him] with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998) (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 n.3 (7th Cir. 1995), and *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994)). "In other words, 'the plaintiff must ultimately show that a desire to frustrate [the plaintiff's] attainment or enjoyment of benefit rights contributed toward the employer's decision and [the plaintiff] can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion.'" *Id.* (internal quotations omitted). Finally, when a plaintiff is "attempting to establish intent under section 510 of ERISA, '[p]roof of pretext is required.' Such proof may be supplied by direct or circumstantial evidence." *Id.* (quoting *Little*, 71 F.3d at 643).

As discussed above, Dr. Holshouser offers no evidence of pretext, either direct or circumstantial, establishing that Abbott terminated him with the intent of preventing his pension

11

benefits from vesting. Abbott, by contrast, presents undisputed evidence that Ms. Hodkinson, the supervisor who made the decision to terminate Dr. Holshouser, and Ms. Lewis, the investigator, were wholly unaware of when his pension benefits might vest, and Ms. Hodkinson based her decision to terminate him solely upon her conclusion that he had improperly disclosed confidential information. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 40, 47-53.) Unable to counter the evidence in the record as to these points, Dr. Holshouser argues that Ms. Hodkinson had "reviewed annually" certain documents "that state Dr. Holshouser's hire date and imply his age," and "had handled annual review documents" and other documents from Dr. Holshouser's employment files that would allow her "to know that his hire date was January 23, 2006, and he would therefore qualify for retirement benefits vesting on or around January 23, 2011." (Pl.'s Resp. 8-9.)

But Dr. Holshouser puts forth no undisputed facts that would allow the Court to infer that Ms. Hodkinson would have been aware of his vesting date at the time she made the termination decision. (Def.'s Resp. Pl.'s 56.1(b)(3)(C) Stmt. ¶ 30.) (disputing nature and content of the documents Ms. Hodkinson allegedly handled)). In fact, he admits the opposite. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 47-52.) Nor has Dr. Holshouser established that Ms. Lewis was aware of his vesting date when conducting her investigation. (Def.'s Resp. Pl.'s 56.1(b)(3)(C) Stmt. ¶ 31.)

As the Seventh Circuit explained, where the party responsible for making the termination decision had no knowledge of the potential effect of the termination on the plaintiff's benefits, specific intent cannot be established. *Smith v. Am. Fed'n of State, Cnty. & Mun. Emps., Ill. Council 31*, 247 Fed. Appx. 804, 808 (7th Cir. 2007) ("[a]bsent such knowledge, [defendant] cannot have acted with the prohibited intent [plaintiff] suggests," and plaintiff therefore "has failed to present a genuine dispute as to the legitimacy of Council 31's proffered reason for her

termination."). Dr. Holshouser provides only unsupported speculation as to what Ms. Hodkinson must have seen, which is wholly contradicted by the undisputed facts in the record set forth above, and therefore does not create a genuine issue of material fact sufficient to defeat summary judgment. *See Lindemann*, 141 F.3d at 296 (where plaintiff "failed to point us to any evidence in the record in support of her conclusion that her supervisors even considered, much less relied on, her past or future receipt of short-term disability benefits in their termination decision . . . the element of pretext required under section 510 analysis is missing."). Summary judgment is therefore granted as to Count II of Dr. Holshouser's Complaint.

## CONCLUSION

As set forth above, the Court grants Defendant Abbott Laboratories' motion for summary judgment [35] in its entirety. Judgment entered for Defendant. Civil case terminated.

Dated: February 27, 2014

John Z. Lee
U.S. District Court Judge